NOT FOR PUBLICATION

**FILED**

**UNITED STATES COURT OF APPEALS**

**DEC 16 2025**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-3363 |
| Plaintiff - Appellee, | D.C. No. 8:22-cr-00056-DOC-2 |
| v. | |
| ANTONIO DUARTE, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Submitted November 18, 2025[**]
Pasadena, California

Before: BYBEE, LEE, and DE ALBA, Circuit Judges.

For his participation in a years-long timeshare-cancellation scheme that used telemarketing companies to fleece almost 600 victims—many of them elderly—out of $5.5 million, Antonio Duarte pled guilty to wire fraud, 18 U.S.C. § 1343.  Duarte

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

challenges his 108-month sentence and restitution order of $5,448,811.23. With respect to a sentencing, "[w]e review the district court's factual findings for clear error, its construction of the United States Sentencing Guidelines de novo, and its application of the Guidelines to the facts for abuse of discretion.'" *United States v. Harris*, 999 F.3d 1233, 1235 (9th Cir. 2021). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The district court did not clearly err in calculating the total loss as between $3,500,000 and $9,000,000 to apply an 18-level enhancement under U.S.S.G. § 2B1.1(b)(1)(J). We review "[a] district court's method of calculating loss under the guidelines . . . *de novo*, and the determination of the loss amount is reviewed for clear error." *United States v. Thomsen*, 830 F.3d 1049, 1071 (9th Cir. 2016).

Because the telemarketing companies were fraudulent in their entirety, the district court did not clearly err by basing loss on the total revenue of the scheme's fraudulent companies, rather than the verified losses of specific victims. We have held that a court "need not make its loss calculation with absolute precision; rather, it need only make a reasonable estimate of the loss based on the available information." *United States v. Zolp*, 479 F.3d 715, 719 (9th Cir. 2007). Under this deferential standard, a court need not "identify specific victims by name" in calculating loss. *United States v. George*, 949 F.3d 1181, 1186 (9th Cir. 2020). The district court easily passed this low bar by providing a detailed table of all 588

victims, identified by name, and their respective losses. *See United States v. Amlani*, 111 F.3d 705, 719 (9th Cir. 1997) (finding the district court did not abuse its discretion in calculating the amount of loss based on "the amount of revenue generated by the telemarketing company" and the "total number of customers (the intended victims), not on the total number of testifying customers").

Duarte also contends that the district court failed to consider evidence that the Telemarketing Companies sometimes performed the advertised services and that certain clients received significant remittances. But this argument fails on multiple fronts. First, the district court *did* give credit for refunds by deducting them from the uncredited total loss amount. Second, the record, including defendant's own statements, confirms that any refunds or successful terminations of timeshare obligations were completed in furtherance of the scheme. *United States v. Blitz*, 151 F.3d 1002, 1012 (9th Cir. 1998) (declining to give offenders "any credit for the money they spent in perpetuating the fraud against their victims").

2. The district court did not err in applying a two-level sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C). Under § 2B1.1(b)(10)(C), a two-level enhancement may be applied to a defendant's Guidelines' base offense level if the offense "involved sophisticated means and the defendant intentionally engaged in or cause the conduct constituting sophisticated means." *United States v. Terabelian*, 105 F.4th 1207, 1219 (9th Cir. 2024). "A 2015 amendment to § 2B1.1

makes clear that, for the enhancement to apply, the defendant herself must have 'intentionally engaged in or caused the conduct constituting sophisticated means.'" *Id.*

Both the fraudulent scheme and Duarte's conduct in furtherance of the scheme deployed "sophisticated means." The scheme lasted multiple years, involved multiple participants, and duped hundreds of victims out of millions of dollars. The scheme was carried out through coordinated roles and an elaborate apparatus that included fake online reviews, a sham customer-service front, and timeshare transfers to straw buyers. Moreover, Duarte's conduct qualifies as sophisticated: He was the "manager" and "actively participated" in the scheme.[1] He directed underlings to deny all refunds and coordinated with them to pacify disgruntled victims, even at times acting as a "Customer Service" representative himself. To deny refunds, Duarte's role as a "closer" entailed tricking elderly victims with complex lies replete with legal jargon. On this record, the district court did not abuse its discretion in finding that Duarte's conduct was sufficiently sophisticated to warrant the two-level increase. *See Terabelian*, 105 F.4th at 1220 (affirming a sophisticated means enhancement where the defendant "might not have been the mastermind in executing

---

[1] While the district court did not expressly make particularized findings when applying the sophisticated means enhancement in this case, it did make the required findings when conducting its overall sentencing analysis. *Terabelian*, 105 F.4th at 1219.

the conspiracy," but "certainly 'knew what was going on' and was a willing participant in furthering the scheme").

3. Finally, the district court did not abuse its discretion in ordering restitution in the amount of $5,453,706.23. The Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A, requires courts to order restitution in "the full amount of each victim's losses" without regard to the defendant's financial situation. *Id.* at § 3664(f)(1)(A); *United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004). In calculating victims' actual losses, "the MVRA affords the district court a degree of flexibility" and "exact precision is not required." *United States v. Anderson*, 741 F.3d 938, 951, 954 (9th Cir. 2013). Using a detailed list of all 588 victims and their losses, the district court devised a "reasonable formula" for determining the amount of victims' losses. *See United States v. Berger*, 473 F.3d 1080, 1108 (9th Cir. 2007). Because Congress intended the restitution process to be "expedient and reasonable . . . with uncertainties resolved with a view toward achieving fairness to the victim," this was not an abuse of discretion. *Gordon*, 393 F.3d at 1048.

**AFFIRMED.**